# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| ROLAND J. DE FRIES,<br><br>　　*Plaintiff*,<br><br>　　v.<br><br>WELLS FARGO BANK, N.A.,<br><br>　　*Defendant*. | No. 3:20-cv-01882-MPS |

## RULING ON MOTION TO DISMISS

The plaintiff, Roland de Fries, sues Well Fargo Bank for loss of and damage to the personal property in his home in Torrington, Connecticut, while the home was involved in foreclosure proceedings. He alleges that Wells Fargo, the mortgagee, hired agents to secure the home while he still owned it but was not living there, and that these agents either stole his personal belongings and "ransacked" the home or permitted others to do so. He brings claims of "unfair practice," negligent hiring and supervision, breach of contract, fraud, negligent misrepresentation, violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §§ 42-110a *et seq.*, intentional infliction of emotional distress, violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12112 *et seq.* (the "ADA"), and "tort and grand larceny." *See* ECF No. 55. Wells Fargo has moved to dismiss the entire complaint.

The plaintiff's operative complaint consists of 64 pages of allegations and 62 pages of exhibits. In the interest of expediting this matter, I will not repeat those allegations here and will assume the parties' familiarity with the plaintiff's allegations and exhibits, as well as with the briefs submitted in connection with the motion to dismiss. I will discuss only those allegations and legal points necessary to provide an understanding of the reasons for my decision to GRANT in part and DENY in part the motion to dismiss. In short, I find that although most of the plaintiff's claims fail because either they are not supported by factual allegations that make the

claims plausible or they invoke legal theories that the law does not recognize, the plaintiff has

pled enough facts to allow the claim for negligent hiring and supervision to proceed.  I will also

afford the plaintiff one more opportunity to replead some of the claims dismissed in this ruling,

and I provide some much-needed guidance at the end of this opinion on the proper way to do so

under Rule 8 of the Federal Rules of Civil Procedure.  I discuss the claims below in the order in

which they appear in the complaint.

I.   **LEGAL STANDARD**

In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), I must determine whether

the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The

court accepts as true all of the complaint's factual allegations when evaluating a motion to

dismiss, *id.*, and must "draw all reasonable inferences in favor of the non-moving party,"

*Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008).

However, "threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice" to survive a motion to dismiss. *Mastafa v. Chevron Corp.*, 770 F.3d

170, 177 (2d Cir. 2014) (citation omitted).

II.   **DISCUSSION**

A.   **"Unfair Practice"**

Neither Connecticut nor federal law recognizes a claim for "unfair practice."  So I

dismiss this claim and discuss plaintiff's claim for violation of the Connecticut Unfair Trade

Practices Act below.

**B.     Negligent Hiring and Supervision/Breach of Contract**

The plaintiff alleges "negligent hiring and supervision" and "breach of contract" in a single count, but I will discuss them separately as they are distinct causes of action. I will begin with the breach of contract claim.

**1.    Breach of Contract**

The plaintiff takes pains in both his complaint and his brief to emphasize that he is not suing under the mortgage, contesting the foreclosure proceedings, or seeking to recover the home itself. Instead, he says, he is suing only about the loss of and damage to his personal property. ECF No. 55 at 10 ("the events at the heart of this complaint are NOT BASED ON FORECLOSURE ACTIONS but rather actions by the Defendants that resulted in the loss of ALL MY WORLDLY POSSESSIONS"); *id.* at 13 ("this Complaint is NOT FILED to make claims related to the mortgage or anything that relates to the mortgage agreement" but instead is related to "the actions and inactions of the Defendant that led to the disappearing, soiling, or otherwise destruction of my possessions"). The problem is that, besides the mortgage, and the related note, which the complaint mentions only to say that there was one (ECF No. 55 at 15), the complaint identifies no other contract between the plaintiff and Wells Fargo. Contrary to the plaintiff's allegation, it is not the law that, in the absence of a contractual relationship, the Defendant has "an obligation . . . [to comply with] certain rules, conduct, communication, and transparency . . . ." *Id.* at 28. Because the existence of a contract is an essential element of any breach of contract claim and because the complaint does not suggest that there was a contract — other than the mortgage and note, which the complaint expressly disavows as the basis for any claim — I must dismiss the breach of contract claim.

## 2.    Negligent Hiring and Supervision

This claim is the only one I find to be sufficient to proceed.  Wells Fargo argues that this claim fails because the plaintiff's allegations are speculative and conclusory, because the plaintiff has not alleged that Wells Fargo owed him any duty, and because language in the mortgage makes clear that Wells Fargo had no duty to preserve or maintain the property.

The plaintiff alleges that he purchased the home in 2011, with a mortgage to Wells Fargo. *Id.* at 15.  In 2013, Wells Fargo initiated foreclosure proceedings, but "chose to return the title to" the plaintiff in December 2016 after apparently mistakenly assuming it "had possession of the title" to his property.  *Id.* at 15-16.  The plaintiff claims that in December 2016, "an accidental foreclosure sale was held . . . allowing unauthorized individuals entry to the home." *Id.* at 22.

In 2016, the plaintiff was involved in a serious car accident in New York City, leading to his temporary relocation there "due to extensive medical treatments" and as a result of which he became "100% disabled and . . . bound to a wheelchair."  *Id.* at 15.  In 2017 and 2018, while he still owned the property but was not living there, he visited the property and noticed that the home "appeared to have been ransacked," and yet there "were no open windows, doors or forced entry according to Torrington police."  *Id.* at 16.  He discovered that Wells Fargo had listed the home with "a real estate broker who appeared to continue to show the property even after" being notified by the plaintiff that the home was not for sale.  *Id.*  Also, at some unspecified time, Wells Fargo retained Berkshire Hathaway Home Services and other "Home Preservation Specialists" to "preserve" the home on its behalf.  *Id.* at 16-17.

Berkshire Hathaway told the police department that it "had received permission from Wells Fargo to list and show [the plaintiff's] home," and this permission "was given" without the

plaintiff's knowledge.  The plaintiff later discovered that "several original artworks that had been taken" from the home "were . . . listed with an auction house."  *Id.* at 17.  The plaintiff suggests that the burglary stemmed from the above-mentioned broker's showing the property or the "winteriz[ing]" of the property by an individual hired by Wells Fargo.  *Id.* at 17-18.  The plaintiff alleges that Wells Fargo knew that the plaintiff had already winterized the home and that he was maintaining the residence at his "full-time primary residence even while [he] was receiving temporary medical treatment in New York City." *Id.* at 18.

The plaintiff claims that in late 2018, Wells Fargo's attorneys advised him that they were cooperating with the local police — apparently regarding the burglary — and that "they would contact [the plaintiff] regarding [his] belongings."  *Id.* at 19.  In January 2019, however, Wells Fargo "listed the property online for sale with images . . . with an empty house and all [his] belongings removed."  *Id.* at 20.  At some unspecified time, Wells Fargo asked the plaintiff to contact the listing agent to gain access to his belongings, but the listing agent told the plaintiff that Wells Fargo had already removed all belongings.  *Id.* at 22.  Wells Fargo held a final foreclosure sale in December 2018 and, in April 2019, quitclaimed the property to the Federal National Mortgage Association.  *Id.* at 20-22.

The plaintiff claims that the burglary of his home and damage to personal property that was not taken stemmed from Wells Fargo's negligent hiring and supervision of "one or more Home Preservation Specialists."  *Id.* at 28.  The plaintiff alleges that an official with the Connecticut Banking Department told him that Wells Fargo has a reputation for hiring unqualified, unvetted, and "dubious" home preservation specialists.

These allegations admittedly do not paint an entirely clear picture.  For example, it is not clear when the burglary (or burglaries) occurred; which of the plaintiff's belongings were taken

in a burglary, which were damaged, and which were removed by Wells Fargo and never returned; which broker was showing the home and which home preservation specialist was monitoring it when these events occurred; whether the home preservation employees or the brokers themselves stole or damaged property or allowed others to do so; and what specifically Wells Fargo did or did not do by way of selecting and supervising the brokers and home preservation specialists.

Nonetheless, the complaint is a pro se pleading, and the law requires me to interpret it liberally "to raise the strongest arguments [it] suggest[s]." *Wright v. C.I.R.*, 381 F.3d 41, 44 (2d Cir. 2004). When I do so, I find that the complaint alleges that Wells Fargo was negligent in selecting or monitoring brokers and home preservation specialists who, over several months, either themselves committed multiple acts of theft and destruction of the plaintiff's personal property or allowed others to do so. Given that the plaintiff's belongings were stolen or damaged and given that there were no signs of forced entry, it is reasonable to infer that the theft of and damage to the plaintiff's personal belongings occurred either while the property was being shown or while brokers or home preservation specialists (or their guests) were in or had access to the home. In other words, it occurred either at the hands of or under the noses of Wells Fargo's contractors. Further, when the allegations of the complaint are accepted as true and construed generously in de Fries's favor, Wells Fargo did nothing to replace its contractors or increase monitoring of them or the home even after the first episode of theft or damage and even after the police became involved and, worse, refused to cooperate with the police's investigation. And Wells Fargo's alleged silence and obfuscation after these events occurred, refusing to respond to the plaintiff's inquiries or provide him clear information and repeatedly referring him to others,

arguably amount to an admission, or at least conduct aimed at covering up its own negligence. Such conduct adds to the impression that Wells Fargo was negligent in the first place.

When these allegations are accepted as true, Wells Fargo's argument that it owed the plaintiff no duty rings hollow.  A mortgagee is not free to dispose of the mortgagor's personal property while foreclosure proceedings are ongoing, even if the mortgagor is temporarily not living in the home; indeed, even after title has passed to the mortgagee in the foreclosure proceedings, it must bring an action for ejectment to remove the inhabitant and her possessions. *See generally First Fed. Bank, FSB v. Whitney Dev. Corp.*, 677 A.2d 1363, 1369-70 (Conn. 1996) (treating mortgagee as landlord after it obtains title and noting that "[a]s did the common law, [provision of landlord-tenant statute] permits a court, in its discretion and if the mortgagee is so entitled, to issue an execution of a judgment of ejectment in favor of the mortgagee after a successful action to foreclose the mortgage, as long as the person in possession is a party to the mortgage action").  This means that if, as the complaint alleges, Wells Fargo assumed a duty to care for the home while the property was in foreclosure proceedings — by hiring contractors to winterize it, preserve it, list it for sale, and show it to prospective buyers — it was required to perform that duty with reasonable care.  Regardless of the foreclosure proceedings, the plaintiff still had an interest in his personal property in the home and, until title passed, an equitable interest in the home itself.

Wells Fargo resists the notion that it owed the plaintiff any duty, pointing to language in the mortgage stating that although the lender may take "reasonable or appropriate" steps to secure and repair the property if foreclosure proceedings are initiated, it is not "under any duty or obligation to do so."  ECF No. 61 at 17; ECF No. 61-1 at 9.  At least at the pleadings stage, however, this argument is unavailing, because it is reasonable to infer that Wells Fargo did

undertake to secure and protect the property by hiring home preservation specialists and other agents but carried out that task in a negligent manner by failing adequately to supervise its contractors. "One who gratuitously undertakes a service that he has no duty to perform must act with reasonable care in completing the task assumed. If one undertakes to perform an act and performs it negligently[,] it makes no difference whether the act was performed gratuitously." *Grenier v. Commr. of Transportation*, 51 A.3d 367, 384 (Conn. 2012).

Accordingly, I find that the plaintiff has managed to nudge his negligent hiring and supervision claim across the line from possible to plausible, and I decline to dismiss that claim.

## C.    Fraudulent Misrepresentation[1]

The complaint does not allege facts that would sustain a fraudulent misrepresentation claim. "The elements of fraudulent misrepresentation are as follows: (1) a false representation must be made as to a statement of fact; (2) the statement was untrue and known by the defendant to be untrue; (3) the statement was made to induce the plaintiff to act; and (4) the plaintiff acted on the false representation to her detriment." *Dorsey v. Mancuso*, 583 A.2d 646, 648-49 (Conn. App. 1990). In federal court, a plaintiff must plead fraud with particularity, Fed. R. Civ. P. 9(b), which means that the plaintiff must "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004) (internal quotation marks omitted).

---

[1] The label applied to this claim in the complaint is "fraudulent misrepresentation or concealment," but fraudulent concealment is not a cause of action in Connecticut. It is, instead, a doctrine that permits tolling of the statute of limitations. *See* Conn. Gen. Stat. Sec. 52-595.

The plaintiff does not identify any false statements of fact in the complaint.  Instead, he alleges that Wells Fargo committed fraud "[b]y knowing and not acting on the destructive behavior of hired 'Home Preservation' specialists on site (even after notification from Plaintiff and [the Torrington Police Department])", "[b]y deflecting and concealing the known actions, timeline, deadlines or [other] information available to the Defendant," and by "[p]leading ignorance and innocence where responsibility was asked for."  ECF No. 55 at 31-32.  He further alleges that "Wells Fargo is guilty of knowingly allowing [its] agents and 'Home Preservation Specialists' to continue their 'Property Preservation efforts,' which continued to damage, destroy and remove [the plaintiff's] possessions," and "acted in a way that concealed and obstructed any of [the plaintiff's] many attempts to identify responsible parties."  *Id.* at 33.  But however wrongful this alleged conduct might be, it is not fraud, because it does not include the making of a false statement of fact.  And while he alleges generally that Wells Fargo "concealed" from him "actions, timeline, deadlines[, and] information," he does not identify any specific omissions of fact, as he must.  Further, fraud theories based on omissions or non-disclosures must be supported by factual allegations showing that the defendant had a duty to disclose the omitted facts.  *See, e.g., Parker v. Colgate-Palmolive Co.*, X08CV030193798S, 2003 WL 22205061, at *3 (Conn. Super. Aug. 8, 2003) ("To constitute fraud the omission or non-disclosure of a fact must be coupled with a legal duty to disclose.").  Although the plaintiff alleges that "Wells Fargo had an obligation to disclose, speak, and act," the plaintiff pleads no facts suggesting that Wells Fargo owed the plaintiff any fiduciary duty, a necessary predicate for a duty to speak.  *See, e.g., Pergament v. Green*, 630 A.2d 615, 618 (Conn. App. 1993) (noting that trial had determined that "the defendant, *as a fiduciary*, had a duty to speak . . .") (emphasis added); *see also Southbridge Associates, LLC v. Garofalo,* 728 A.2d 1114, 1119 (Conn. App. 1999) ("Generally there exists

9

no fiduciary relationship merely by virtue of a borrower lender relationship between a bank and its customer.").

### D.   Negligent Misrepresentation[2]

The negligent misrepresentation makes many of the same allegations and suffers from all the same flaws as the fraudulent misrepresentation claim: the complaint specifies no false statements of fact and no facts suggesting that Wells Fargo had a duty to disclose facts to the plaintiff.  The plaintiff's conclusory allegations about "lying about actions taken regarding possessions," ECF No. 55 at 36, are insufficient.

### E.   Violation of CUTPA

The plaintiff alleges that "Wells Fargo has violated CUTPA by hiring unqualified, unvetted agents to perform services as part of Wells Fargo's Home Preservation Practices.  Wells Fargo acted negligent[ly] and improperly by not using the appropriate supervision, training, the failure to adequately instruct and monitor its agents . . . ."  *Id.* at 45.  He also alleges that Well Fargo "ignor[ed] and with[eld] all information and avoid[ed] all communication with [him]." *Id.* at 46.

The latter allegation, as noted above, is unsupported by any factual allegations suggesting that Wells Fargo had a duty to speak, and without such a duty, Wells Fargo's silence is not grounds for a CUTPA claim.  *Cadco, Ltd. v. Doctor's Associates, Inc.*, 204 A.3d 737, 752 (Conn. App. 2019) (omissions did not amount to CUTPA violation where defendant had no duty to speak: "Our Supreme Court has held that a failure to disclose can be deceptive only if, in light of all the circumstances, there is a duty to disclose.") (quoting *Glazer v. Dress Barn, Inc.*, 873 A.2d 929, 961 (Conn. 2005)).  The former allegations sound in negligence.  While negligence may

---

[2] Again, the plaintiff labels this claim "negligent misrepresentation or concealment," but there is no cause of action for "negligent concealment" in Connecticut.

support a CUTPA claim in some cases, this is not such a case, because the plaintiff pleads no

facts suggesting that Wells Fargo's actions violated any public policy or that they inflicted

substantial consumer injury.  *See O'Sullivan v. Glen*, DBD136012450S, 2014 WL 2580643, at

*7 (Conn. Super. May 1, 2014) (citing cases and explaining that the prong of CUTPA asking

whether the complained of conduct is "immoral, unethical, oppressive, or unscrupulous" cannot

be satisfied by allegations of mere negligence and that the substantial consumer injury prong

requires that the injury be substantial, that it not be outweighed by countervailing benefits to

consumers or competition that the conduct produces, and that it be an injury that consumers

themselves could not have avoided).

### F.    Intentional Infliction of Emotional Distress

The plaintiff fails to plead a claim for intentional infliction of emotional distress because

he fails to allege facts suggesting that Wells Fargo engaged in extreme and outrageous conduct.

To plead a claim for intentional infliction of emotional distress, the plaintiff must allege facts

suggesting "(1) that the actor intended to inflict emotional distress or that he knew or should

have known that emotional distress was the likely result of his conduct; (2) that the conduct was

extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress;

and (4) that the emotional distress sustained by the plaintiff was severe." *Appleton v. Bd. of

Educ. of Town of Stonington*, 757 A.2d 1059, 1062 (Conn. 2000) (internal quotation marks

omitted).

> Liability for intentional infliction of emotional distress requires conduct that
> exceeds all bounds usually tolerated by decent society. Liability has
> been found only where the conduct has been so outrageous in character, and
> so extreme in degree, as to go beyond all possible bounds of decency, and to
> be regarded as atrocious, and utterly intolerable in a civilized community.
> Generally, the case is one in which the recitation of the facts to an average
> member of the community would arouse his resentment against the actor, and
> lead him to exclaim, 'Outrageous!'

*Id.* (internal quotation marks omitted); *see also Bank of Am., N.A. v. Criscitelli*, CV136038369S, 2015 WL 5806294, at *5 (Conn. Super. Aug. 31, 2015) (where complaint alleged that bank had agreed to loan modification and then reneged on the loan modification agreement in bad faith and commenced foreclosure, conduct did not "rise to the high bar set by Connecticut courts for intentional infliction of emotional distress claims.").

Plaintiff alleges that Wells Fargo had a "lack of control over what was taking place on the premises under [its] . . . care," refused to respond to "numerous phone calls, emails and pleadings," and did not cooperate with a Torrington police investigation of thefts at his home, all the while knowing he was disabled.  ECF No. 55 at 49, 51.  Elsewhere in the complaint he alleges that due to the negligence of Wells Fargo and the property preservation company it hired, his home was burglarized and his possessions stolen or damaged.  He also alleges that Wells Fargo neglected to, and at times refused to, communicate with him about who was responsible for maintaining the property.

As distressing as these alleged events may have been for the plaintiff, his allegations sound mostly in negligence, and even those suggesting deliberate conduct do not set forth outrageous conduct of the type needed to clear the "high bar" for intentional infliction of emotional distress claims.  The plaintiff does not allege any facts suggesting that Wells Fargo itself stole from him or that it threatened, physically harmed, harassed, or humiliated him, let alone that any of these types of acts were done at an outrageous level.  The plaintiff's allegations do not make out a claim for intentional infliction of emotional distress.

### G.    ADA

The plaintiff's ADA claim fails as well.  While plaintiff alleges that Wells Fargo "was aware of [his] disability and the limitations [it imposed on him]," ECF No. 55 at 52, he does not

12

allege any facts suggesting that Wells Fargo took some action against him, or omitted to perform some act, *because* he was disabled.  His allegations that his difficult medical situation made him unable to remain in the home and protect his property do not give rise to a reasonable inference that Wells Fargo discriminated against him.  Further, the ADA does not require mortgage lenders to alter otherwise universally applicable terms or conditions of mortgage polices to accommodate disabilities of borrowers.  *See Webster Bank v. Oakley*, 830 A.2d 139, 161 (Conn. 2003) (Lender was "not required to modify its default and foreclosures policies and procedures [under ADA] because the ADA operates to afford equal access to goods, services, facilities, privileges, advantages and accommodations, but does not regulate the content of such goods, services, facilities, privileges and advantages.").

> ### H.    "Tort and Grand Larceny"

Connecticut courts do not recognize a generic "tort" cause of action; "tort" is the name given to the category of wrongs for which one party may sue another.  It is not itself a distinct cause of action.  "Grand larceny" refers to a crime punishable by Connecticut state law, but grand larceny and other crimes are prosecuted by the State and do not provide a basis for private causes of action.

Because the law does not recognize these claims, I dismiss them.

> ### I.    Repleading

Wells Fargo urges me to deny leave to replead because plaintiff has already been afforded two opportunities to amend his original complaint and amendment would be "futile." ECF No. 61 at 25.  It is true that on June 8, 2022, after Wells Fargo filed its first motion to dismiss, I instructed the plaintiff that he must "either file a response to the motion or file an amended complaint pleading as many facts as possible, consistent with Rule 11 of the Federal

Rules of Civil Procedure, to address the alleged defects discussed in Defendant's memorandum of law," and stated that I would not allow further amendments after June 28, 2022.  ECF No. 44. The plaintiff chose to amend his complaint again in response to that order, and June 28, 2022, has long since passed.  Nonetheless, applicable Second Circuit precedent indicates that, where the Court has not, as in this case, set a scheduling order with a pleadings amendment deadline under Rule 16, it must hew to the "permissive standard" of amendment under Rule 15, which permits denial of amendment only for undue delay, bad faith, dilatory motive, and futility.  *See Loreley Financing (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) (finding that district court abused discretion when it denied leave to amend following the granting of a motion to dismiss after plaintiff received opportunity to review defendant's three-page letter outlining its motion to dismiss at pretrial conference: "Without the benefit of a ruling, many a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies."); *see Securities and Exch. Commn. v. Rio Tinto plc*, 17CV07994 (AT) (DF), 2020 WL 2504008, at *8-9 (S.D.N.Y. Mar. 9, 2020) (finding that good cause standard of Rule 16, rather than permissive standard of Rule 15 construed in *Loreley*, applies when request to amend is made after deadline set forth in scheduling order and citing cases).

The only exception to the permissive standard of amendment in Rule 15 that might apply here is, as Wells Fargo notes, futility, and I do find that it would be futile for the plaintiff to seek to amend some of his claims.  Specifically, the facts he has set forth in his complaint simply do not give rise, no matter how many times they might be restated, to an ADA, fraud, negligent misrepresentation, or intentional infliction of emotional distress claim.  And the "unfair practice" and "tort and grand larceny" claims are not recognized causes of action, and so there is no point

in trying to replead them.  Therefore, the ADA, fraud, negligent misrepresentation, intentional infliction of emotional distress, unfair practice, and tort and grand larceny claims are dismissed with prejudice.  Although the allegations in the complaint — especially the plaintiff's disavowal of any reliance on the mortgage — also make it appear unlikely that Wells Fargo breached a contract with the plaintiff, I will dismiss that claim, along with the CUTPA claim, without prejudice and will allow the plaintiff, **if he wishes**, to replead those claims, provided he follows these instructions:

1. He must at least contact Attorney Cat Itaya of the Federal Pro Se Legal Assistance Program at New Haven Legal Assistance to obtain her assistance in drafting a revised complaint.  *See* https://nhlegal.org/federalprose/.  If, after an initial consultation with Attorney Itaya, he chooses to proceed without her assistance, he may do so, but then he must follow the further instructions below.  (There is no charge for Attorney Itaya's services.)

2. Any amended complaint will entirely replace and supersede the existing complaint and may not incorporate by reference earlier complaints or include any claims previously dismissed with prejudice.

3. Any amended complaint must comply with Rule 8 of the Federal Rules (available on the Court's website), which requires a "short and plain statement of the claim."  This means that the complaint should tell the basic story of who harmed the plaintiff, how the harm was accomplished, and when it occurred.  That is, it should lay out the basic facts, with, where possible, dates (or, if not available, months and years), names, and just enough facts to show that each claim satisfied the elements of the cause of action being asserted.  (E.g., a breach of contract claim must identify a contract between the parties, explain

15

which provision of it was breached (and when and by whom and by what action), and explain why this breach caused the plaintiff damages.)  But a "short and plain statement" also means that the complaint need not, and should not, be lengthy, recount unnecessary detail (such as details regarding the nature and extent of the plaintiff's injuries or his communications with opposing counsel), and it need not cite, attach, or discuss the evidence that supports it.  Further, there is no need to cite cases, statutes, or legal principles, and doing so often only confuses the factual narrative.  Finally, while attachments are not prohibited, at least in this case they are not helping the plaintiff to state a claim, and they are unnecessary. In this case, the plaintiff's story should occupy substantially fewer than 64 pages and should require no exhibits.

4. Any amended complaint must be filed within 30 days of this order.  The Court will treat this deadline as part of a scheduling order under Rule 16 and is unlikely to extend it, as the case is already somewhat aged.  If the plaintiff chooses not to file an amended complaint — and he is certainly not required to do so — the case will proceed on his negligent supervision and hiring claim.

## III.   CONCLUSION

For the reasons above, I grant in part and deny in part the motion to dismiss (ECF No. 60). Within 14 days of this order, the parties must confer and file a revised Rule 26(f) report. The Rule 26(f) report must set a deadline for the plaintiff to amend his complaint no later than April 17, 2023.

IT IS SO ORDERED.

_____
/s/
Michael P. Shea, U.S.D.J.

Dated:  Hartford, Connecticut
           March 16, 2023