## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

ROLAND J. DE FRIES,

    *Plaintiff*,

    v.

WELLS FARGO BANK, N.A.,

    *Defendant*.

No. 3:20-cv-01882 (MPS)

## RULING ON MOTION TO DISMISS

The plaintiff, Roland De Fries, brought this suit against Wells Fargo Bank, N.A. ("Wells Fargo") for loss of and damage to the personal property in his home in Torrington, Connecticut, while the home was involved in foreclosure procedures. He claims that Wells Fargo's agents, ostensibly hired to perform "home preservation services," stole his personal property and left the home uninhabitable. De Fries, proceeding *pro se*, alleges that Wells Fargo is liable for (1) negligent hiring and supervision, (2) breach of the mortgage agreement, (3) negligence, (4) violations of the Connecticut Unfair Trade Practices Act, and (5) intentional infliction of emotional distress. Wells Fargo has filed a partial motion to dismiss. For the reasons that follow, I grant Wells Fargo's motion to dismiss as to De Fries' breach of contract and intentional infliction of emotional distress claims, and deny its motion as to all other claims.

## I.   BACKGROUND

The following facts, drawn from De Fries' Second Amended Complaint, are accepted as true for the purpose of this motion.[1]

---

[1] In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), I must consider not only "facts alleged in the complaint" but also "documents attached to the complaint as exhibits." *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). I also consider documents "incorporated by reference in the complaint," and documents not incorporated by reference "where the complaint relies heavily upon [their] terms and effect, thereby rendering the document[s] integral to the complaint." *DiFolco*, 622 F.3d at 111 (citations and internal

### A. Damage and Theft of De Fries' Possessions

From 2007 to 2016, De Fries' primary residence was a property located at 2656 Torringford Street in Torrington, Connecticut (the "Property"). ECF No. 73 at 7 ¶ 4. On December 9, 2011, De Fries executed a note in the amount of $308,600 and a mortgage on the Property in favor of Wells Fargo (the "Mortgage"). *Id.* at 6 ¶ 1. As relevant here, the Mortgage provides:

> **7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition . . . . Lender or its agent may make reasonable entries upon or inspections of the property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause . . . .

> **9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this [Mortgage]; . . . or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this [Mortgage], including . . . securing and/or repairing the Property . . . . Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or other dangerous conditions, and have utilities turned on or off. Although lender make take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

ECF No. 86-1 at 12-13; ECF No. 77-1 at 20-21.

Wells Fargo commenced a foreclosure action against De Fries on April 18, 2013 in Connecticut Superior Court. ECF No. 73 at 6 ¶ 2; *see Wells Fargo Bank, N.A. v. DeFries*, No. LLI-CV-13-6008537-S (Conn. Super. Ct., J.D. Litchfield, April 18, 2023).

---

quotation marks omitted). In particular, I consider "exhibits and documentation attached to the original [and Amended] Complaint[s]" that are "incorporated by reference" in the Second Amended Complaint. *Chase v. Toomey*, No. 9:21-CV-001176, 2022 WL 844048, at *1 n.1 (N.D.N.Y. Mar. 22, 2022).

In 2016, De Fries was injured in a motor vehicle accident, and was "bound to a wheelchair and unable to access the upper floor bathroom and bedroom at [his] residence." ECF No. 73 at 7 ¶ 4. De Fries was temporarily unable to reside in the home while he was receiving treatment in New York City, but it remained his "full-time primary residence." *Id.* at 9-10 ¶ 7. De Fries asked Wells Fargo to "leave [his] property alone," and Wells Fargo knew that he had winterized the Property. *Id.* Nevertheless, Wells Fargo determined the Property was vacant, hired someone to winterize the Property, *id.*, and "perform[ed] property preservation services," *id.* at 17 ¶ 2.

Between December 5, 2016 and December 12, 2016, Wells Fargo erroneously "assumed [it] had possession of the title" to the Property. ECF No. 73 at 7 ¶ 4. Wells Fargo had "an accidental foreclosure sale" of the property in December 2016, and in February 2017, the foreclosure sale was rescinded. ECF No. 73 at 13 ¶ 23. Wells Fargo then "returned the property" to De Fries "[of its] own doing and seemingly out of nowhere." ECF No. 73 at 7 ¶ 4.

"[A]fter some additional research," De Fries also learned that Wells Fargo "listed [his] home with a real estate broker," Berkshire Hathaway Home Services, which "continu[ed] to show the property even after receiving notice from [De Fries] that it was . . . not for sale." ECF No. 73 at 8 ¶ 5. Berkshire Hathaway Home Services told the police that it "had received permission from Wells Fargo to list and show [the Property], and that this permission was given without [De Fries'] knowledge." *Id.* at 8 ¶ 6. On April 11, 2017, De Fries contacted Wells Fargo to provide information about the theft of items from his home; the next day, Wells Fargo removed the realty listing for the Property. *Id.* Wells Fargo did not admit that it had "let strangers into [De Fries'] home" until 2019. *Id.* at 8-9 ¶ 6.

In 2017 and 2018, De Fries made several visits to the Property and observed that the house "appeared to have been ransacked." *Id.* at 7 ¶ 5. He "found no evidence of unlawful entry," and

the Torrington Police also concluded there were "no open windows, doors, or [signs of] forced entry." *Id.* at 8 ¶ 5. De Fries alleges that the home was plundered by "Wells Fargo's Home Preservation Specialists." *Id.* at 8.

Wells Fargo still failed to secure the property, *id.* at 17 ¶ 1, and so there were "further burglaries," *id.* at 9 ¶ 7. De Fries "found that several original artworks that had been taken from [the Property] were in fact listed with an auction house." ECF No. 73 at 9 ¶ 7. The police were able to retrieve only four artworks, and never solved the case. *Id.*; *id.* at 19.

During the period when Wells Fargo was purportedly securing the Property, "[t]he house went from pristine to . . . utterly soiled." *Id.* at 17 ¶ 1. Valuable property was "removed and put up for sale." *Id.* at 22. The realtor "allowed strangers, children, and countless others into Plaintiff's home," who "played with [De Fries'] son's toys," "soiled the furniture," and left behind "cigarette butts" and "bodily fluids." *Id.* at 19, 22. The Home Preservation Specialists left doors open, so "vermin and critters" were able to enter the living spaces. *Id.* at 19. When De Fries had recovered sufficiently to return home, the Property was "completely uninhabitable." *Id.* at 22.

De Fries attempted to communicate with Wells Fargo about these issues, but his efforts were "futile." ECF No. 73 at 10 ¶ 8. Though Wells Fargo knew the property was not properly secured "for years," *id.* at 23, it did not "adjust" or provide "any level of appropriate supervision, training, and instruction to [its] agents," *id.* at 20. On October 22, 2018, De Fries sent a Cease-and-Desist letter to Wells Fargo, describing "a string of unlawful damages to and removal of items and personal possessions from [the Property], as well as unlawful entry." *Id.* at 10 ¶ 8; *see* ECF No. 55 at 87-88. He also "demanded to see who was servicing the property." ECF No. 73 at 10-11 ¶ 8.

On November 5, 2018, Wells Fargo replied to say that it would not communicate with De Fries while litigation was pending, but it had "forwarded [his] inquiry to [its] litigation counsel to review during the . . . foreclosure." *Id.* at 11 ¶ 9. When De Fries attempted to speak with Wells Fargo's foreclosure attorney, however, she informed him that her firm was "only handling the foreclosure process for Wells Fargo," and any other issues "had nothing to do with the firm and were being handled by Wells Fargo directly." *Id.* at 20-21. On November 13, 2018, De Fries again sent his Cease-and-Desist letter to Wells Fargo and its attorneys. *Id.* at 11 ¶ 10. Later that week, "Wells Fargo's attorneys responded that they were cooperating with the local police and that they would contact [him] regarding [his] belongings." *Id.* at 11 ¶ 11; *id.* at 21. But Wells Fargo was not cooperating with the police, and "respond[ed] to authorities" only when "threatened with a [s]ubpoena." *Id.* at 21.

Wells Fargo eventually sent De Fries a list of dates when "people entered the house." *Id.* at 13 ¶ 24. The dates on the list contradicted Wells Fargo's earlier representation to the Connecticut Superior Court that "Wells Fargo . . . had ceased allowing 'Home Preservation Specialists' into the home." *Id.* at 13 ¶ 24. And the documents also indicated that "Wells Fargo had many more people and parties involved [in preservation efforts] than . . . [it] had originally [c]ommunicated." *Id.* at 10 ¶ 7.

The Connecticut Superior Court entered a judgment of foreclosure and set the Law Date for December 3, 2018. *Id.* at 11 ¶ 12. Wells Fargo "held a final foreclosure sale on December 4, 2018." *Id.* at 13 ¶ 23. On January 27, 2019, "Wells Fargo listed the property online for sale with images [of] an empty house and all [De Fries'] belongings removed." *Id.* at 12 ¶ 15. That month, De Fries had a call with Wells Fargo about "how to gain access to the property to retrieve [his] possessions . . . to no avail." *Id.* at 12 ¶ 16. He also made two requests that Wells Fargo and their

attorneys "locate the contents of [his] home." *Id.* at 12 ¶ 17. Ultimately, in April of 2019, Wells Fargo notified him that it had transferred the Property to a new owner, it had not "received a retention from the new owner with regard to" De Fries' personal property, and it therefore was "not in a position to provide a response to [his] request." *Id.* at 12 ¶ 18. After multiple additional requests for information, *id.* at 12-13 ¶¶ 19-22, Wells Fargo directed De Fries to a listing agent, who told him that "Wells Fargo had removed all belongings before [the listing agent] was there," *id.* at 14 ¶ 25.

De Fries was not the only homeowner impacted by Wells Fargo's careless home preservation efforts. De Fries alleges that Wells Fargo hires home-repair contractors who have "little oversight" and will sometimes "force their way into houses . . . that are still occupied by their owners, changing out locks and removing what they find inside, including family heirlooms and other valuables." Ben Hallman, *Banks Keep Breaking Into Houses, And Homeowners Are Fighting Back*, Huffington Post (Oct. 2, 2013), available at https://www.huffpost.com/entry/bank-contractor-lawsuits-safeguard_n_3975574; *see* ECF No. 73 at 23 (quoting portions of this article and incorporating it by reference). "[P]eople in 31 states have filed more than 250 lawsuits against the six largest national companies that contract directly with banks to inspect and repair homes in some stage of default or foreclosure." ECF No. 73 at 23 (quoting article). And a Connecticut Banking Department employee told De Fries that Wells Fargo hires "'dubious' help." *Id.* at 10 ¶ 7.

### B. Procedural History

De Fries commenced this action, *pro se*, on December 2, 2020. ECF No. 2. He subsequently filed an Amended Complaint, which asserted claims for (1) unfair practices, (2) negligent hiring and supervision, (3) breach of contract, (4) fraud, (5) negligent misrepresentation, (6) violations of the Connecticut Unfair Trade Practices Act ("CUTPA"), (7) intentional infliction of emotional

distress, (8) violations of the Americans with Disabilities Act ("ADA"), and (9) tort and grand larceny. ECF No. 55. Wells Fargo filed a motion to dismiss, ECF No. 60, which I granted in part and denied in part, ECF No. 67. I dismissed without prejudice De Fries' breach of contract and CUTPA claims, and I dismissed with prejudice De Fries' unfair practices, fraud, negligent misrepresentation, intentional infliction of emotional distress, ADA, tort, and grand larceny claims. *Id.* at 14-15. However, I denied Wells Fargo's motion to dismiss as to De Fries' negligent hiring and supervision claim. *Id.* at 8.

Thereafter, De Fries filed a Second Amended Complaint, which asserts claims for (1) negligent hiring and supervision, (2) breach of contract and negligence, (3) violations of CUTPA, and (4) intentional infliction of emotional distress. ECF No. 73. Wells Fargo has moved to dismiss Counts 2, 3, and 4 of the Second Amended Complaint. ECF No. 77.

## II.    LEGAL STANDARD

To avoid dismissal under Fed. R. Civ. P. 12(b)(6), the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). I accept as true all of the complaint's factual allegations when evaluating a motion to dismiss, *id.*, and must "draw all reasonable inferences in favor of the non-moving party," *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008). However, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive a motion to dismiss. *Mastafa v. Chevron Corp.*, 770 F.3d 170, 177 (2d Cir. 2014) (citation omitted). I may also dismiss a complaint if it fails to comply with Fed. R. Civ. P. 8 because it is "so confused, ambiguous,

vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Wynder v. McMahon*, 360 F.3d 73, 80 (2d Cir. 2004) (citation and internal quotation marks omitted).

Although a *pro se* complaint must be liberally construed "to raise the strongest arguments it suggests," *pro se* litigants are nonetheless required to "state a plausible claim for relief." *Walker v. Schult*, 717 F.3d at 124 (brackets, internal quotation marks, and citations omitted). "[A] liberal interpretation of a *pro se* civil rights complaint may not supply essential elements of the claim that were not initially pled." *Darby v. Greenman*, 14 F.4th 124, 130 (2d Cir. 2021) (internal quotation marks omitted).

## III.   DISCUSSION

### A.  Rule 8

Wells Fargo argues that the Second Amended Complaint does not comply with Fed. R. Civ. P. 8(a)'s requirement that a complaint contain a "short and plain statement" of the plaintiff's claim for relief, because it is "excessively long and unnecessarily redundant." ECF No. 94 at 1; ECF No. 77-1 at 2.  I disagree. The standard that Rule 8 sets is "lenient," and "[d]ismissal pursuant to the rule is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Wynder*, 360 F.3d at 80 (internal quotation marks omitted). Moreover, a "*pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation and internal quotation marks omitted). While the Second Amended Complaint includes some extraneous or irrelevant information, it is not so "long and unnecessarily redundant" that its "true substance, if any, is well disguised." *Wynder*, 360 F.3d at 80.  Therefore, I decline to dismiss the complaint for failure to comply with Rule 8.

## B. Breach of Contract Claim

The Second Amended Complaint alleges that Wells Fargo breached the Mortgage by failing "to take reasonable steps to secure and maintain the Property during the foreclosure process." ECF No. 73 at 17 ¶ 1.  The elements of a breach of contract claim are (1) the formation of an agreement, (2) performance by one party, (3) breach of the agreement by the other party, and (4) damages. *Flagstar Bank, FSB v. Ticor Title Ins. Co.*, 660 F. Supp. 2d 346, 350 (D. Conn. 2009). De Fries' claim fails at the third step, because he has not adequately alleged that Wells Fargo breached any provision of the Mortgage.

Like his prior complaints, De Fries' Second Amended Complaint does not "allege the provisions of the contract upon which the [breach of contract] claim is based." *Timmons v. City of Hartford*, 283 F. Supp. 2d 712, 718 (D. Conn. 2003); *see* ECF No. 67 at 15-16 (notifying De Fries that "a breach of contract claim must . . . explain which provision of [the contract] was breached"). But a copy of the mortgage is attached to De Fries' response to the motion to dismiss. *See* ECF No. 86-1 at 6-19; *DiFolco*, 622 F.3d at 111 ("[A] district court may consider . . . documents incorporated by reference in the complaint."). And I can infer from the language in the Second Amended Complaint that De Fries intends to allege that Wells Fargo violated Paragraphs 7 and 9 of the Mortgage, which discuss the borrowers' and lenders' roles in preserving the Property. *See* ECF No. 73 at 17-18 ¶ 1 (alleging that the Agreement requires Wells Fargo to "take reasonable steps to maintain the Property during the foreclosure process" and Wells Fargo "fail[ed]" to take those steps).

Paragraph 7 states that the borrower is responsible for "maintain[ing] the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition." ECF No. 86-1 at 12. It also permits Wells Fargo to "make reasonable entries upon and inspections of the

Property," and to "inspect the interior of the improvements on the Property" for "reasonable cause." *Id.* If the borrower "fails to perform the covenants and agreements" in the Mortgage, or "abandon[s] the Property," Paragraph 9 provides that Wells Fargo "may do and pay for whatever is reasonable or appropriate to protect [its] interest in the Property . . . including . . . securing and/or repairing the Property." *Id.* "Securing the Property includes, but is not limited to, entering the Property to make repairs, . . . drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off." *Id.* at 13. Notably, while Wells Fargo "may take action" under Paragraph 9, it "does not have to do so," "is not under any duty or obligation to do so," and "incurs no liability for not taking any or all actions authorized under" Paragraph 9. *Id.*

As these provisions make clear, it is the borrower who has an obligation to "maintain the Property." *Id.* at 12. While Wells Fargo "may . . . secur[e]" the Property, where doing so is "reasonable and appropriate," Wells Fargo is not "under any duty or obligation to do so." *Id.* at 12-13. So Wells Fargo's alleged "fail[ure] [to] take reasonable steps to secure and maintain the Property during the foreclosure process," ECF No. 73 at 17 ¶ 1, does not constitute a breach of the Mortgage. I therefore grant Wells Fargo's motion to dismiss De Fries' breach of contract claim.

### C. Negligence Claim

The Second Amended Complaint also alleges that Wells Fargo was negligent in performing its property preservation services. ECF No. 73 at 17 ¶ 2. "To establish a claim of negligence, a plaintiff must demonstrate that the defendant was under a duty of care, that the defendant's conduct breached that duty, and that the breach caused an actual injury to the plaintiff." *Brooks v. Powers*, 328 Conn. 256, 272 (2018). Wells Fargo argues that it "had no duty of care to [De Fries]," since the contract states that Wells Fargo was "not under any duty or obligation" to maintain the

property. ECF No. 77-1 at 7. I disagree, and find that De Fries has adequately alleged his negligence claim.

Wells Fargo is correct that, under the terms of the Mortgage, it did not "owe[] [De Fries] any duty to act to prevent theft or damage to the Property." *Malick v. JP Morgan Chase Bank, N.A.*, 797 F. App'x 563, 566 (2d Cir. 2019) (summary order) (applying Connecticut law and affirming judgment in favor of mortgagee on negligence claim where mortgagee allegedly failed to "prevent theft or damage" to a property). But De Fries alleges that Wells Fargo voluntarily took on home preservation efforts. ECF No. 73 at 9-10 ¶ 7. And "[o]ne who gratuitously undertakes a service that he has no duty to perform must act with reasonable care in completing the task assumed." *Grenier v. Comm'r of Transp.*, 306 Conn. 523, 547 (2012) (internal quotation marks omitted). So while Wells Fargo did not have an obligation to secure or weatherize its mortgagors' properties, once it endeavored to do so, it had an obligation to act with reasonable care. *See Norboe v. Wells Fargo Bank, N.A.*, No. NNH-CV-13-6038377-S, 2018 WL 1137575, at *17 (Conn. Super. Ct., J.D. New Haven, Jan. 31, 2018) (holding that Wells Fargo had "a duty of care in connection with property preservation activities on [a homeowner's] property" and denying motion for summary judgment on negligent supervision claim); *Davis v. Money Source Inc.*, No. 3:21-CV-00047 (AWT), 2021 WL 3861908, at *11 (D. Conn. Aug. 30, 2021) (holding mortgage servicer had a duty to properly oversee property inspection services, and denying motion to dismiss negligent supervision claim); *cf. Palimas v. Aress Realty Co.*, 130 Conn. 687, 690 (1944) ("A landlord gratuitously undertaking repairs who makes them negligently and thereby causes injury to a person lawfully using the premises is liable.").

The Mortgage does not release Wells Fargo from this duty: it states only that Wells Fargo "incurs no liability for *not taking* any and all action authorized" by Paragraph 9. ECF No. 86-1 at

13 (emphasis added). Wells Fargo may still be held liable for actions it *does* take under Paragraph 9, or for actions it takes that are not authorized by Paragraph 9. For instance, if Wells Fargo undertakes home preservation efforts, it can be held liable if its agents stole or damaged De Fries' Property. But Wells Fargo cannot be held liable for a decision *not* to secure or weatherize the property at all, or for a decision to take some steps to secure the property but not others. *See Malick v. J.P. Morgan Chase Bank, N.A.*, No. 3:13-CV-00669 (VLB), 2016 WL 2858772, at *10 (D. Conn. May 16, 2016), *aff'd* 797 F. App'x 563 (2d Cir. 2019) (finding for defendant mortgage company on negligence claim, after evidence at bench trial showed only that "the Premises were . . . accessed and severely damaged by unknown third parties at unknown times, and that [the mortgage company] never chose to install an alarm system").

The allegations in the complaint are sufficient to support an inference that Wells Fargo's agents did not act with reasonable care in their home preservation efforts. De Fries alleges that Wells Fargo's Home Preservation Specialists[2] left doors open and damaged furniture. ECF No. 73 at 19, 22. Items were repeatedly stolen from the home, but the police found no signs of forced entry, suggesting that the thieves had easy access to the home. *Id.* at 8 ¶ 5. According to De Fries, Wells Fargo also hired a realtor to show the house, even though Wells Fargo did not have title to the home and the home was not for sale, leading to further damage to the property. *Id.* at 7-8 ¶¶ 4-

---

[2] If these "Home Preservation Specialists" were Wells Fargo's agents or employees, it can be held liable for their actions committed during the course of that agency/employment relationship. *See Matthiessen v. Vanech*, 266 Conn. 822, 839 (2003) ("[U]nder the common-law principle of respondeat superior, an employer is vicariously liable for compensatory damages arising out of the tortious conduct of his employee when that conduct occurs during the course of the employee's employment."). The Second Amended Complaint indicates that the individuals primarily responsible for the damage to his property included Wells Fargo "employees," ECF No. 73 at 25, and Wells Fargo "subcontractors," *id.* at 15; Hallman, *Banks Keep Breaking Into Houses*, *supra* (indicating that people who do home preservation work are generally "independent contractors working indirectly for banks"). "The existence of an agency relationship is a question of fact," *Beckenstein v. Potter & Carrier, Inc.*, 191 Conn. 120, 133 (1983), and I therefore "should not definitively resolve th[is] issue[] without further development of the factual record," *Beary v. ING Life Ins. & Annuity Co.*, 520 F. Supp. 2d 356, 366 (D. Conn. 2007); *see also CompuDyne Corp. v. Shane*, 453 F. Supp. 2d 807, 829 (S.D.N.Y. 2006) ("[T]he scope of the agency relationship is a question of fact not properly resolvable on a motion to dismiss."). And in any event, Wells Fargo's motion to dismiss does not argue that it is not liable for the negligent acts of the Home Preservation Specialists, so I need not decide this issue at this point.

6; *id.* at 19, 22. And De Fries claims he notified Wells Fargo about the burglaries and the damage to his home multiple times over several years, but Wells Fargo did not "adjust" its policies and refused to cooperate with the police investigation. *Id.* at 20-22.

Thus, De Fries has adequately pled his negligence claim. However, I note that De Fries added this negligence claim to his Second Amended Complaint without leave of Court. *See* ECF No. 94 at 3-4 (Wells Fargo raising this point). De Fries' First Amended Complaint asserted a negligent hiring and supervision claim, but did not assert a negligence claim. *See* ECF No. 55 at 27-31. I denied Wells Fargo's motion to dismiss the negligent hiring and supervision claim, and dismissed all remaining claims, permitting De Fries to replead only his CUTPA and breach of contract claims. ECF No. 67 at 14-15. De Fries never sought leave to add a negligence claim before he filed his Second Amended Complaint. Even so, because De Fries is *pro se* and the facts underlying his negligence claim are closely related to the other allegations in his Second Amended Complaint, I do not dismiss this claim. Still, I am cognizant of the need to avoid prejudice to Wells Fargo, as the deadline for summary judgment briefing has passed. So I will permit Wells Fargo to file a motion for summary judgment on De Fries' negligence claim within 30 days of this order.

**D.  CUTPA Claim**

Next, De Fries contends that Wells Fargo violated CUTPA by "hiring . . . unqualified and unvetted agents and third parties for their Home Preservation Practices," "fail[ing] to properly investigate and respond to [De Fries'] complaints," and misleading De Fries on several occasions. ECF No. 73 at 18-24. I previously granted Wells Fargo's motion to dismiss the CUTPA count in De Fries' First Amended Complaint. ECF No. 67. In that ruling, I explained that his allegations all "sound[ed] in negligence," and "[w]hile negligence may support a CUTPA claim in some cases, this is not such a case, because [De Fries] [pled] no facts suggesting that Wells Fargo's actions

violated any public policy or that they inflicted substantial consumer injury." *Id.* at 10-11. Wells Fargo claims that the CUTPA claim in the Second Amended Complaint suffers from the same defect, and De Fries is "just attempting to repackage the same CUTPA claim that this Court already dismissed." ECF No. 77-1 at 8. I disagree.

CUTPA prohibits the use of "unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. § 42-110b(a). A plaintiff bringing a CUTPA claim must show that "(1) the defendant engaged in unfair or deceptive acts or practices in the conduct of any trade or commerce; . . . and (2) [he] has suffered an ascertainable loss of money or property as a result of the defendant's acts or practices." *Artie's Auto Body, Inc. v. Hartford Fire Ins. Co.*, 287 Conn. 208, 217 (2008). To determine whether a defendant has engaged in an "unfair or deceptive act or practice," Connecticut courts have adopted the criteria known as the "cigarette rule," i.e.,

> (1) [w]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers, competitors or other businesspersons.

*Am. Car Rental, Inc. v. Comm'r of Consumer Prot.*, 273 Conn. 296, 305-06 (2005) (alterations omitted). A practice may violate CUTPA without meeting all three criteria—i.e., a practice "may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three . . . ." *Id.*

"Negligence . . . generally has been held not sufficient by itself to constitute a violation of CUTPA." *Milford Paintball, LLC v. Wampus Milford Assocs., LLC*, 156 Conn. App. 750, 764 (2015). "Under CUTPA, only intentional, reckless, unethical or unscrupulous conduct can form the basis for a claim." *Ulbrich v. Groth*, 310 Conn. 375, 410 n.31 (2013). "[R]eckless behavior may constitute a CUTPA violation. . . ." *Robbins Eye Ctr., P.C. v. Com. Park Assocs., Inc.*, No.

14

FBT-CV-16-6059479-S, 2017 WL 1334291, at *5 (Conn. Super. Ct., J.D. Fairfield at Bridgeport, Mar. 22, 2017).

In the Second Amended Complaint, De Fries' allegations support an inference that Wells Fargo's conduct was reckless, not merely negligent. He claims that Wells Fargo was aware of the issues with its Home Preservation Specialists, both because media outlets had reported on these issues and because he repeatedly notified Wells Fargo of the destruction of the Property. ECF No. 73 at 23. Despite these warnings, De Fries says Wells Fargo "failed to . . . adjust" or "provide . . . any level of appropriate supervision, training and instruction to [its] agents, resulting in further damages." *Id.* at 20. And he alleges that Wells Fargo was at times deceptive; for instance, he claims it told him it was cooperating with the police investigation, when it was not. *Id.* at 21.

It is also reasonable to infer that Wells Fargo's conduct has caused "substantial injury to consumers" under the third cigarette-rule prong. *Am. Car Rental*, 273 Conn. at 306. The Huffington Post article, which the Second Amended Complaint incorporates by reference, reports that in many cases Wells Fargo hired contractors who "force their way into houses . . . that are still occupied by their owners, changing out locks and removing what they find inside, including family heirlooms and other valuables." Hallman, *Banks Keep Breaking Into Houses*, *supra*. De Fries alleges that "people in 31 states have filed more than 250 lawsuits against the six largest national companies that contract directly with banks to inspect and repair homes in some stage of default or foreclosure." ECF No. 73 at 23.

De Fries has added allegations to the Second Amended Complaint that suggest Wells Fargo's conduct was reckless and substantially harmed consumers. As such, I find that the Second Amended Complaint states a claim for violations of CUTPA.[3]

---

[3] De Fries also asks that the Court "allow [him] to Amend the Complaint to plead a Claim for Punitive Damages [under CUTPA] in a Separate Count." ECF No. 86 at 27. Under Fed. R. Civ. P. 54(c), the Court's final judgment

### E.  Intentional Infliction of Emotional Distress Claim

Finally, De Fries contends that Wells Fargo is liable for intentional infliction of emotional distress. But as Wells Fargo points out, I "already dismissed [De Fries' intentional infliction of emotional distress claim] *with* prejudice . . . and instructed [De Fries] not to refile it." ECF No. 77-1 at 10; *see* ECF No. 67 at 15. "If [a] plaintiff decides to amend his complaint, he must not assert any claims that have been dismissed with prejudice by the Court." *Kaminski v. Connecticut*, No. 3:21-CV-01347 (SALM), 2022 WL 124321, at *4 (D. Conn. Jan. 13, 2022). So De Fries cannot replead his intentional infliction of emotional distress claim, and that claim is dismissed.

## IV.  CONCLUSION

For the foregoing reasons, I grant in part and deny in part Wells Fargo's motion to dismiss. I dismiss De Fries' breach of contract and intentional infliction of emotional distress claims. De Fries has not shown that good cause warrants extending his deadline to amend the complaint under this Court's scheduling order. Since he has had multiple opportunities to state these claims, I dismiss both claims with prejudice. I deny Wells Fargo's motion to dismiss as to De Fries' negligence and CUTPA claims. As De Fries stated the negligence claim for the first time in the Second Amended Complaint, however, I will give Wells Fargo an opportunity to move for summary judgment on that claim. Wells Fargo may file a motion for summary judgment on De Fries' negligence claim within 30 days of this order, i.e., on or by April 25, 2024.

IT IS SO ORDERED.

/s/

Michael P. Shea, U.S.D.J.

Dated:          Hartford, Connecticut

             March 26, 2024

---

"should grant the relief to which each party is entitled, even if the party has not demanded that relief in [his] pleadings." So De Fries need not amend his complaint to add a demand for punitive damages under CUTPA.